UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LARRY TERRILL CAVER,

                Plaintiff,                  Case No. 1:14-cv-171

v.                                         Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because Defendants are immune and/or Plaintiff fails to state a claim against them.

**Factual Allegations**

Plaintiff currently is incarcerated in the Kinross Correctional Facility (KCF), but the events giving rise to his complaint occurred while he was confined at the Lakeland Correctional Facility (LCF).  In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC)  Lieutenant (Unknown) Blackmon, Sergeant R. Riddle, Corrections Officer Larry Bryan, Corrections Officer and Hearing Investigator Tina Stepp, Hearing Officer M. Szappan, Hearing Administrative Officer R. Russell, Access Securpak Company ("Access Securpak"), Sams West, Inc. ("Sams West") and Narcotics Analysis Reagent Mark II Kit Company ("Reagent").

On December 25, 2012, Defendant Bryan charged Plaintiff with a Class I misconduct for substance abuse - marijuana.  According to the misconduct report, while conducting a routine strip search of Plaintiff, Bryan found a small bag of a green leafy substance.  (*See* 12/25/2012 Class I Misconduct Report, docket #1-2, Page ID#39.)  Defendant Riddle field tested the substance using a kit manufactured by Defendant Reagent, which tested positive for marijuana.  (*Id.*)  The substance was placed in the Michigan State Police evidence box for further testing.  (*Id.*)  Plaintiff claimed that the substance in question was a Bigelow green tea bag that he purchased from Defendant Access Securpak and/or Sams West.  Following a misconduct hearing on January 14, 2013, Defendant Szappan found Plaintiff guilty of the offense and sentenced him to fifteen days' loss of privileges. (*See* Class I Misconduct Hearing Report, docket #1-2, Page ID#41.)  Plaintiff sought reconsideration of the misconduct conviction, which was denied by Defendant Russell on February 7, 2013.  (*See* Request for Rehearing & Response, docket #1-2, Page ID##42-43.)  In addition to fifteen days' loss of privileges, Plaintiff contends that the false misconduct charge and conviction resulted in his placement on lay-in from his work assignment in Food Service, loss of 30 days of visitation privileges and transfer to another facility.

In addition to the misconduct charge and conviction, Plaintiff was criminally charged in Branch County with one count of prisoner in possession of contraband, MICH. COMP. LAWS § 800.281(4), and one count of possession of a controlled substance - marijuana, MICH. COMP. LAWS § 333.7402(2)(d).

The laboratory report issued by the Michigan State Police on April 11, 2013, indicated that no controlled substance was detected in the material seized from Plaintiff. (*See* MSP Laboratory Report, docket #1-2, Page ID#37.)  In light of the test results, the Branch County Circuit Court issued an order on May 14, 2013, granting the prosecutor's motion for *nolle prosqui* and dismissed the criminal charges against Plaintiff.  (Branch County Circuit Court Ord., docket #1-2, Page ID#74.)  Plaintiff also filed an action in the Ingham County Circuit Court challenging his misconduct conviction.  On his own motion, Defendant Russell granted Plaintiff a rehearing on October 21, 2013, and found him not guilty of the offense.  (*See* Request for Rehearing Response, docket #1-2, Page ID##44.) The order provided that all reference to the misconduct violation would be expunged from Plaintiff's file.  (*Id*.)  After the misconduct conviction was expunged, the Ingham County Circuit Court granted the defendant's motion to dismiss Plaintiff's action and granted in part Plaintiff's motion for taxation of costs in the amount of $150.00.  (*See* 12/13/2013 Ingham County Circuit Court Ord., docket #1-2, Page ID#47-48.)

Plaintiff asserts that all of the named Defendants "intentionally conspired with one another, with deliberate indifference and/or reckless disregard of the truth and of Plaintiff's constitutional rights . . . ."  (Compl.¶ 50, Page ID#11.)  According to Plaintiff, Defendants were aware of several other cases where the same drug testing kit yielded false positive results to tests on green tea possessed by prisoners incarcerated within the MDOC, but failed to disclose that evidence

to the hearing officer or the Branch County prosecutor in violation of Plaintiff's Fifth, Sixth and

Fourteenth Amendment rights.  Plaintiff further claims that Defendants Szappan and Stepp violated

his due process rights in the misconduct proceedings by refusing to call or interview witnesses, or

obtain answers to the interrogatories prepared by Plaintiff.  In addition, Plaintiff alleges that Szappan

conducted a portion of the administrative hearing process without Plaintiff being present.  Plaintiff

also claims that Defendants failed to adequately train and supervise their employees regarding the

constitutional rights of prisoners.

Plaintiff seeks compensatory and punitive damages.

## Discussion

I.      Immunity

A.      **MDOC**

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the

form of relief requested, the states and their departments are immune under the Eleventh Amendment

from suit in the federal courts, unless the state has waived immunity or Congress has expressly

abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v.*

*Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874,

877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that

the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v.*

*Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000

WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the

Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money

damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State

Police*, 491 U.S. 58 (1989)).  Therefore, the MDOC will be dismissed.

B.      **Defendants Szappan and Russell**

Plaintiff sues Defendant Hearing Officer Szappan, who conducted Plaintiff's

misconduct hearing, and Defendant Russell, who initially denied Plaintiff's request for rehearing.

The Sixth Circuit has held that Michigan hearing officers are professionals in the nature of

administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they

are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their

capacities as hearing officers.  *Id*.; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007);

*Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *Williams v. McGinnis*, Nos. 02-1336, 02-1837,

2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967)

(judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

Consequently, Defendants Szappan and Russell are absolutely immune from Plaintiff's claims for

monetary damages.   Because Plaintiff requests only monetary damages, his claims against

Defendants Szappan and Russell  must be dismissed.[1]

II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

---

[1]Even if Plaintiff's claims against Defendants Szappan and Russell were not subject to dismissal on immunity grounds, Plaintiff fails to state a due process claim against them as set forth below.

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A.   Defendants Access Securpak, Sams West and Regeant

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d

at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Defendants Access Securpak, Sams West and Reagent are private corporations. A private corporation that performs a public function, such as contracting with the state to run its prisons or to provide medical care to prisoners, may be found to act under color of law for purposes of § 1983. *See Street*, 102 F.3d at 814; *Skelton*, 963 F.2d at 102. In this case, however, there are no factual allegations whatsoever in the complaint that reasonably suggest that these private companies performed a public function that could be fairly attributed to the state. The fact that a company provides goods or services to prisoners pursuant to a contract with the MDOC, alone, is insufficient to transform it into a state actor for purposes of an action under § 1983. *See, e.g., Iswed v. Caruso*, No. 1:08–cv–1118, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009) (telephone company that contracted with the state for delivery of telephone services to prisoners was not a "state actor" for purposes of § 1983); *Clark v. Corr. Corp. of America*, No. 04-1280-T/AN, 2005 WL 1923149, at *4 (W.D. Tenn. Aug. 2, 2005) (prisoner complaint failed to provide a basis for state action in the conduct of defendant DEC-TECH, a private vendor that provided goods to the state). Plaintiff, therefore, fails to state a claim against Defendants Access Securpak, Sams West and Reagent.

B. **Defendants Blackmon, Riddle, Bryan and Stepp**

1. *Conspiracy under § 1983 and § 1985*

Plaintiff alleges that Defendants conspired to violate his constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681,

695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff

must show the existence of a single plan, that the alleged co-conspirator shared in the general

conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed

in furtherance of the conspiracy caused an injury to the plaintiff.  *Id.*; *Bazzi v. City of Dearborn*, 658

F.3d 598, 602 (6th Cir. 2011).  Similarly, to state a claim for conspiracy under § 1985, a plaintiff

must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving

the plaintiff of his constitutional rights and (3) that the conspirators committed an overt act (4) that

injured the plaintiff.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005);

*Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen.*

*Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)).  The § 1985 plaintiff also must demonstrate that the

conspiracy was motivated by a class based animus, such as race.  *Radvansky*, 395 F.3d at 314;

*Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  Under both § 1983

and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations

unsupported by material facts are insufficient to state a claim.  *Twombly*, 550 U.S. at 565

(recognizing that allegations of conspiracy must be supported by allegations of fact that support a

"plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776

(6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826

F.2d 1534, 1538 (6th Cir. 1987).

      Plaintiff's conspiracy claims against Defendants require little discussion. While

Plaintiff asserts a broad conspiracy among all of the named Defendants to deny him of his

constitutional rights, he fails to make specific factual allegations that would to support such a claim

under § 1983 or § 1985.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Maki v. Laakko*,

88 F.3d 361, 367 (6th Cir. 1996).  In addition, it is well established that vague and conclusory

allegations of conspiracy unsupported by material facts are insufficient to state a claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see also Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Accordingly, Plaintiff fails to state a claim for conspiracy.

### 2. *Due Process*

Plaintiff claims that Defendants violated his substantive and procedural due process rights when they were aware of other cases where the same drug testing kit yielded false positive results to tests on green tea possessed by prisoners incarcerated within the MDOC, but failed to disclose that evidence to the hearing officer or the Branch County prosecutor.  He further claims that his procedural due process rights were violated in the misconduct proceedings.

The Due Process Clause of the Fifth Amendment, which is applicable to the state through the Fourteenth Amendment, provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  This provision encompasses two forms of protection: substantive due process and procedural due process.  "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle.  He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer–Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367–68 (6th Cir. 1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).  Cases in which the Sixth Circuit has found misconduct charges to be sufficiently shocking are few and involve extreme circumstances, such as framing a prisoner by surreptitiously planting illegal drugs on the inmate. *See Cale v. Johnson*, 861 F.2d 943, 949-50 (6th Cir. 1988) (prison officials planted illegal drugs on inmate in retaliation for his complaints regarding prison food) *overruled in other part by Thaddeus–X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also*

*Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004) (providing false testimony against a prisoner

violated substantive due process).

           In this case, Plaintiff does not allege that the officers intentionally fabricated the

misconduct charge against him.  Rather, Plaintiff claims that the tea in his possession tested positive

for marijuana, but the officers should have questioned the test results in light of a history of false

positive tests and should have shared that information with the hearing officer and prosecutor.  At

most, the officers were negligent for failing to inform the hearing officer and prosecutor about the

previous false positive tests.  Such negligence does not "shock the conscience."  *See Sperle v. Mich.*

*Dep't of Corr.*, 297 F.3d 483, 491 (6th Cir. 2002) (Simple negligence does not rise to the level of

a substantive due process violation); *Watson v. Curley*, No. 2:12-cv-259, 2012 WL 6019498, at *5

(W.D. Mich. Dec. 3, 2012) (negligent conduct of the part of Defendants did not shock the conscience

or constitute an egregious abuse of power).  Accordingly, Plaintiff fails to state a substantive due

process claim.

           Plaintiff also fails to state a claim for violation of his procedural due process rights

arising from the misconduct proceedings.  A prisoner's ability to challenge a prison misconduct

conviction depends on whether the convictions implicated any liberty interest.  In the seminal case

in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal

procedural safeguards that prison officials must follow before depriving a prisoner of good-time

credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to

process that attaches to all prison disciplinary proceedings; rather the right to process arises only

when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture

of good-time credits.  *Wolff*, 418 U.S. at 557 (citations omitted).  Assuming for purposes of this

opinion that Plaintiff's misconduct conviction could result the loss of disciplinary credits that would

extend his  prison sentence, his misconduct conviction ultimately was overturned on rehearing and

expunged from Plaintiff's record.[2]  As a result, Plaintiff did not lose good time as a result of the

conviction.  Plaintiff, therefore, cannot state a due process claim arising from the loss of disciplinary

credits.

          Aside from the issue of disciplinary credits, a prisoner may be able to raise a due-

process challenge to prison misconduct convictions that result in a significant, atypical deprivation.

*See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff, however, has not identified any significant

deprivation arising from his convictions.  A temporary loss of privileges, including 30 days of

visitation privileges, does not constitute an atypical and significant hardship in relation to ordinary

incidents of prison life.  *See Wolff*, 418 U.S. at 571 n.19 ("We do not suggest, however, that the

procedures required by today's decision for the deprivation of good time would also be required for

the imposition of lesser penalties such as the loss of privileges."); *Ingram v. Jewell*, 94 F. App'x 271,

273 (6th Cir. 2004) (14 day loss of privileges did not impose an atypical, significant deprivation);

*Dixon v. Morrison*, No. 1:13-cv-1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec.12, 2013)

(fifteen-day loss of privileges did not impose an atypical, significant deprivation implicating due

process); *Bazetta v. McGinnis*, 430 F.3d 795, 802-03 (6th Cir. 2005) (MDOC policy banning

---

[2]The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted of crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).

virtually all visitation for inmates found guilty of two or more major misconducts for substance

abuse was not dramatic departure or atypical and significant hardship in relation to ordinary incidents

of prison life).

Likewise, Plaintiff's lay-in from his prison job in Food Service did not implicate a

liberty interest because prisoners do not have a constitutionally protected liberty interest in prison

employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d

508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he

was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no

constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o

prisoner has a constitutional right to a particular job or to any job").

Moreover, the Supreme Court repeatedly has held that prisoners have no

constitutional right to be incarcerated in a particular facility or to be held in a specific security

classification.  *See Olim v. Wakinekona*, 461 U.S. 245, 250 (1983); *Moody v. Daggett*, 429 U.S. 78,

88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  Although the indefinite confinement

of a prisoner to administrative segregation, *see Harden–Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir.

2008), or the transfer to a type of maximum security facility with virtually no sensory or

environmental stimuli, *see Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), can create a liberty interest

due to its "atypical, significant deprivation," a simple transfer or higher security classification does

not trigger a liberty interest.  *See, e.g., Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Guile v. Ball*,

521 F. App'x 542, 544 (6th Cir. 2013); *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009);

*Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 358 (6th Cir. 2002).  Plaintiff's transfer from

LCF, a Security Level II facility, to KCF, a Security Level I and II facility, clearly did not give rise to a protected liberty interest.[3]

### 3. *Failure to Train/Supervise*

Plaintiff also claims that Defendants failed to adequately train and supervise their employees regarding the constitutional rights of prisoners. As an initial matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

> This court has held that § 1983 liability must be based on more than respondeat superior . . . . Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. . . . [A] plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson* County, 668 F.2d 869, 874 (6th Cir. 1982)). As set forth above, Plaintiff failed to allege or show that Defendants Blackmon, Riddle, Bryan and Stepp engaged in any unconstitutional behavior. Accordingly, they must be dismissed from this action.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendants are immune and/or Plaintiff fails to state a claim against them.

---

[3]"There are five security level designations for CFA facilities: Level I, Secure Level I, Level II, Level IV, and Level V. The security level is based on the level of security and staff supervision the facility provides. Level I is the least secure level; Level V is the most secure." MDOC Policy Directive 05.01.140(A) (Oct. 10, 2011).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      June 19, 2014              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE